UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

MICHAEL INNAMORATO,

                                         *Plaintiff*,

– against –

THE COUNTY OF SUFFOLK,

                                         *Defendant*.

---

**MEMORANDUM & ORDER**
23-cv-06573 (NCM) (ARL)

**NATASHA C. MERLE**, United States District Judge:

Before the Court is defendant County of Suffolk's motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, defendant's motion is **GRANTED**.

## BACKGROUND

On May 6, 2023, plaintiff Michael Innamorato was arrested in Suffolk County for driving while intoxicated ("DWI"). *See* Compl. ¶¶ 10, 17, 20, 33, 53, ECF No. 1; Compl. Ex. A ("Hr'g Tr.") 3:16–23, 10:25–11:3, ECF No. 1-1.[2] Defendant seized plaintiff's car in

---

[1]     The Court hereinafter refers to defendant's Memorandum of Law in Support of Motion to Dismiss Plaintiff's Complaint, ECF No. 24, as the "Motion"; plaintiff's Memorandum of Law in Opposition to Defendant's Motion to Dismiss the Complaint, ECF No. 25, as the "Opposition"; and defendant's Reply Memorandum of Law in Further Support of Defendant's Motion to Dismiss Plaintiff's Complaint, ECF No. 26, as the "Reply." Throughout this Opinion, page numbers for docket filings refer to the page numbers assigned in ECF filing headers.

[2]     In deciding a motion to dismiss, the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

connection with the arrest pursuant to Suffolk County Code ("S.C. Code") § 420. Compl. ¶¶ 33, 95. That statute provides that a vehicle shall be seized as an instrument of a crime when a driver is arrested for a DWI offense. *See* Compl. ¶¶ 33, 60; S.C. Code § 420-6; *see also* Hr'g Tr. 3:17–25. The S.C. Code further provides that a prompt pre-forfeiture retention hearing must be conducted before a neutral judicial hearing officer ("JHO"), where the County must establish that (1) "the County is likely to succeed on the merits of a forfeiture action;" (2) "retention is necessary to preserve the vehicle from destruction or sale during the pendency of a forfeiture proceeding;" and (3) "no other measures would protect the County's interest during the proceedings." Compl. ¶ 39; *see also* S.C. Code § 420-6(B).

On May 26, 2023, plaintiff through his counsel appeared for the retention hearing in connection with the May 6, 2023 seizure of his vehicle. Compl. ¶¶ 53–55. At the hearing, the attorney representing the County "did not introduce a single document or exhibit into evidence[,] [n]or did the County produce before the court, the few documents he described on the record, or show any documents, of any kind, to the plaintiff, or plaintiff's counsel." Compl. ¶ 61. Instead, relying entirely on attorney argument rather than evidence, the presiding hearing officer—JHO Filiberto—ordered that the County retain possession of plaintiff's vehicle. *See* Compl. ¶¶ 67, 69.

On September 1, 2023, plaintiff sued defendant for allegedly violating his due process rights in connection with the hearing. *See* Compl. ¶¶ 80–88. Plaintiff also brings claims for violation of his procedural and substantive due process rights based on defendant's application of S.C. Code § 420. *See* Compl. ¶¶ 94–104. Relatedly, plaintiff brings an as-applied constitutional challenge to the statute, alleging that the County "unconstitutional[lly] appli[ed] . . . Chapter 420" by subjecting plaintiff's car to forfeiture.

2

Compl. ¶ 110. Plaintiff seeks damages pursuant to 42 U.S.C. § 1983 ("Section 1983"), as well as declaratory relief deeming defendant's practices and policies unconstitutional. Compl. ¶¶ 88, 93, 104, 113.

On November 8, 2023, District Judge Joan Azrack stayed motion practice pending the Supreme Court's decision in *Culley v. Marshall*, 601 U.S. 377 (2024). *See* ECF Minute Entry dated November 8, 2023, ECF No. 10. The case was reassigned to the undersigned on February 2, 2024. Following the Supreme Court's *Culley* decision, defendant filed the instant motion, which plaintiff opposes. *See generally* Mot.; Opp'n.

## LEGAL STANDARD

When deciding a motion to dismiss, a district court must "accept[] all factual claims in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 403 (2d Cir. 2014).[3] Factual disputes are typically not the subject of the Court's analysis, as Rule 12 motions "probe the legal, not the factual, sufficiency of a complaint." *Plastic Surgery Grp., P.C. v. United Healthcare Ins. Co. of N.Y., Inc.*, 64 F. Supp. 3d 459, 468–69 (E.D.N.Y. 2014). That is, "the issue" on a motion to dismiss "is not whether a plaintiff will ultimately prevail" but instead whether a plaintiff is "entitled to offer evidence to support the claims." *Sikhs for Just. v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012). At the same time, a plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conclusory allegations and legal conclusions masquerading as factual conclusions do not suffice to prevent a motion to dismiss. *Nwaokocha v. Sadowski*, 369 F. Supp. 2d 362, 366

---

[3]    Throughout this Opinion, the Court omits all internal quotation marks, footnotes, and citations, and adopts all alterations, unless otherwise indicated.

(E.D.N.Y. 2005) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

## DISCUSSION

### I.    Legal Framework

To analyze plaintiff's claims, it is useful, by way of background, to discuss the relevant caselaw regarding vehicle seizures and procedural due process.

In *Krimstock v. Kelly*, 306 F.3d 40 (2d Cir. 2002) ("*Krimstock I*"), the Second Circuit addressed a constitutional challenge to a New York City vehicle forfeiture statute, N.Y.C. Code § 14–140. That statute permitted the City to seize vehicles following the arrests of drivers accused of driving while intoxicated or committing other crimes for which vehicles could be used as instrumentalities of the crimes. See *id.* at 44–45. The court determined that the City's practice of retaining vehicles for months or years pursuant to the statute after warrantless seizures without first providing claimants— including potentially innocent title owners—a prompt hearing before a neutral fact-finder amounted to a constitutional violation. *Id.* at 48.

Specifically, the Second Circuit concluded that the "Due Process Clause requires that claimants be given an early opportunity to test the probable validity of further deprivation, including probable cause for the initial seizure, and to ask whether other measures, short of continued impoundment, would satisfy the legitimate interests of the City in protecting the vehicles from sale or destruction pendente lite." *Id.* at 68. Thus, the court determined that claimants must "be given a prompt post-seizure retention hearing, with adequate notice" to comport with due process. *Id.* at 68–69. However, in doing so, the court emphasized that "[t]here is no universal approach to satisfying the requirements of meaningful notice and opportunity to be heard in a situation such as this." *Id.* at 69.

Rather than define the contours of the retention hearing itself, the Second Circuit instead "le[ft] it to the district court, in consultation with the parties, to fashion appropriate procedural relief," consistent with its guidance. *Id*. at 69.

Accordingly, on remand, the district court and the parties crafted a procedure in New York City for what is now known as a *Krimstock* hearing. *See generally Krimstock v. Kelly*, No. 99-cv-12041, 2005 U.S. Dist. LEXIS 43845 (S.D.N.Y. Nov. 29, 2005) ("*Krimstock II"); see also Krimstock v. Kelly*, 464 F.3d 246, 249 (2d Cir. 2006) ("*Krimstock III*"). *Krimstock* hearings require that a claimant be provided an opportunity to be heard, in person or through counsel, before a neutral fact-finder to determine whether: (i) probable cause existed for the arrest of the driver; (ii) it is likely that the City will prevail in an action to forfeit the vehicle; and (iii) it is necessary that the vehicle remain impounded in order to ensure its availability for a judgment of forfeiture. *See Krimstock II*, 2005 U.S. Dist. LEXIS 43845, at *3–4. In these hearings, "the burden of proof by a preponderance of the evidence as to the[] issues" rests upon the city. *Id*. at *4. The Second Circuit later affirmed this process. *See Jones v. Kelly*, 378 F.3d 198, 204 (2d Cir. 2004).

Years later, the Second Circuit addressed a constitutional challenge to the sufficiency of process afforded in Suffolk County's retention hearings in *Ferrari v. County of Suffolk*, 845 F.3d 46 (2d Cir. 2016). The plaintiff there was arrested for driving while intoxicated, and his car was impounded pursuant to the County's "DWI Seizure Law," which is "specifically and exclusively aimed at repeat offenders of New York's drunk driving laws." *Id*. at 48 (quoting Suffolk County Local Law No. 7-2004 § 1 (2004)).[4] At

---

[4]     This statute is the "materially indistinguishable" predecessor to the statute at issue in the instant case, S.C. Code § 420. *Ferrari*, 845 F.3d at 49 n.2.

the retention hearing, the County presented evidence of plaintiff's arrest and long history of traffic violations—including a prior conviction for driving while intoxicated. *Id.* The plaintiff through his counsel argued to the hearing officer that his car should be returned because, pursuant to *Krimstock*, the Constitution barred the court from "permit[ing] the County to maintain continued retention of the motor vehicle in the absence of the County establishing: A, the probable validity of the initial seizure. B, the validity of the continued retention and C, that something short of continued retention . . . would not suffice." *Id.* at 51.

After the hearing officer ordered that the County retain the vehicle, the plaintiff sued the County pursuant to Section 1983, alleging that the County deprived him of due process. *Id.* at 48. The district court agreed, concluding that the evidence proffered at the hearing was insufficient because "the Due Process Clause required the County as part of its prima faci[e] case" to introduce evidence proving that the plaintiff was "liable to destroy the car if he received it back" and that "alternative measures would not suffice to protect the County's financial interests." *Id.* at 54. Accordingly, the district court granted the plaintiff summary judgment as to liability on his due process claim. *See id.* at 56.

The Second Circuit reversed on appeal and concluded that the plaintiff's due process rights were not violated at the retention hearing. Specifically, the Court found that "the district court erred in concluding that our decision in *Krimstock I* prevents a county or municipality from relying on public safety concerns as the basis for retention pendente lite." *Id.* at 62. The Court explained that the statute at issue in *Krimstock I* was not sufficiently directed at public safety concerns; the statute at issue in *Ferrari*, however, "[wa]s very different: it focuses, explicitly and exclusively, on repeat DWI or reckless driving offenders." *Id.* at 61.

6

The Second Circuit further clarified its *Krimstock I* decision, noting that it had previously affirmed *Krimstock* hearing procedures "without analysis, and for the sole reason that the City, which had participated in creating the contours of the hearing, did not challenge the district court's remedy." *Id.* at 58. The Court explained that it "did not, at any point, describe the necessary allocations of any burdens of persuasion or production" at retention hearings in its *Krimstock I* decision. *Id.* The Court further explained that "[e]ven to the degree that the order in *Krimstock II* could be construed as laying out the burdens of persuasion or production for New York City retention hearings in regard to the narrow issue of the sufficiency and availability of alternative measures (a question we need not decide), we have never held that this process is indeed the only one due process permits at such a hearing." *Id.* at 59.

Indeed, the court rejected the plaintiff's assumption, "at times shared by the district court, that the procedural requirements articulated in *Krimstock II* necessarily constitute the minimum constitutional requirements at any retention hearing in any municipality pursuant to any forfeiture law[.]" *Id.* at 59 n.18.

The Second Circuit explained:

> The district court in *Krimstock II* fashioned a process for New York City—a process created in consultation with the parties in *Krimstock I*, and in reflection of the specific forfeiture law at issue. There is no reason to suppose, without further analysis, that every procedural requirement articulated in that order must be followed by other municipalities which did not have the opportunity to participate in crafting that order or to consent to it, and whose laws are not (as is the case here) the same as the law at issue in *Krimstock I*. That one municipality has adopted a particular procedure to comport with its obligations under the Due Process Clause does not, *a fortiori*, render that procedure the constitutional minimum for every other municipality, and with regard to different laws.

*Id.*

Finally, in *Culley v. Marshall*, 601 U.S. 377 (2024), the Supreme Court addressed "whether the Constitution requires a preliminary hearing in civil forfeiture cases[.]" *Id.* at 384. The Court took up that question in the context of an Alabama statute which permitted the civil forfeiture of cars used to commit drug offenses, "so long as the State then promptly initiated a forfeiture case." *Id.* at 381.

In *Culley*, both the plaintiffs' cars were seized pursuant to the statute. The State of Alabama filed forfeiture complaints against the cars 10 and 13 days after they were seized, respectively. *Id.* at 382. At issue was whether state officials violated the plaintiffs' due process rights "by retaining their cars during the forfeiture process without holding preliminary hearings." *Id.*

The Supreme Court held that "due process does not require a separate preliminary hearing before the forfeiture hearing." *Id.* at 390. However, the Court observed that "[w]hen States seize and seek civil forfeiture of personal property, due process requires a *timely* post-seizure forfeiture hearing." *Id.* at 384 (emphasis in original). Elaborating on its precedent, the Court explained that "a post-seizure delay may become so prolonged that the dispossessed property owner has been deprived of a meaningful hearing at a meaningful time." *Id.* at 386 (quoting *United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in U.S. Currency*, 461 U.S. 555, 562–63 (1983)).[5]

---

[5]    Courts in this Circuit have recognized *Culley*'s apparent abrogation of *Krimstock* to the extent the latter is read to require a pre-forfeiture preliminary hearing. *See Santander Consumer USA, Inc. v. City of Yonkers*, No. 22-cv-08870, 2024 WL 4817649, at *7 n.3 ("[*Krimstock*'s] holding, however, was abrogated by the Supreme Court in *Culley*, where it held that due process requires a timely forfeiture hearing, but not a separate preliminary hearing."); *see also Wos v. County of Suffolk*, No. 24-cv-00644, 2025 WL 1425725, at *1 n.1 (E.D.N.Y. May 16, 2025) ("[T]here is an open question whether *Krimstock* remains governing law following the Supreme Court's decision last term in *Culley* . . . .").

## II.    Constitutional Claims

Plaintiff's complaint includes three counts for relief premised on alleged constitutional violations: (1) one count for a procedural due process violation based on the events which transpired at plaintiff's retention hearing, Compl. ¶¶ 80–88; (2) one count for procedural and substantive due process violations based on the County's application of S.C. Code § 420, Compl. ¶¶ 94–104; and (3) one count for an as-applied constitutional challenge to S.C. Code § 420, Compl. ¶¶ 105–113.

### A. Section 1983 Claims

Section 1983 supplies the exclusive remedy for a municipality's violation of constitutional rights. *See Fenner v. City of New York*, No. 08-cv-02355, 2009 WL 5066810, at *4 (E.D.N.Y. Dec. 21, 2009) ("It is firmly established that since Congress has provided a remedy under § 1983 for a municipality's violations of constitutional rights, a direct action under the Constitution does not lie."); *see also Pauk v. Bd. of Trs. of City Univ. of N.Y.*, 654 F.2d 856, 865 (2d Cir. 1981) ("[W]hen § 1983 provides a remedy, an implied cause of action grounded on the Constitution is not available."). To state a claim against a municipality pursuant to Section 1983, a plaintiff must satisfy the "well-settled requirements of *Monell*[.]" *Martin v. County of Nassau*, 692 F. Supp. 2d 282, 296 (E.D.N.Y. 2010) (citing *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Pursuant to *Monell*, a plaintiff must plausibly allege three elements: "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." *Agosto v. N.Y.C. Dep't of Educ.*, 982 F.3d 86, 97 (2d Cir. 2020); *see also Monell*, 436 U.S. at 691. "[A]n underlying constitutional violation is a prerequisite to municipal liability under *Monell*." *Walker v. City of New York*, No. 24-cv-00330, 2024 WL 1679331, at *2 (E.D.N.Y. Apr. 18, 2024).

9

A policy or custom for purposes of *Monell* can be established in four ways: "(i) a formal policy officially endorsed by the municipality; (ii) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (iii) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (iv) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees." *Scott v. Westchester County*, 434 F. Supp. 3d 188, 201 (S.D.N.Y. 2020).

Allegations of "isolated acts" that are "performed by non-policy making municipal employees . . . are generally insufficient to plausibly allege a policy, custom, or practice." *Destine v. City of New York*, No. 20-cv-00082, 2021 WL 5868158, at *2 (S.D.N.Y. Dec. 10, 2021). Moreover, a plaintiff "cannot merely establish that the municipality employed a tortfeasor," but rather must establish "that the municipality's own acts or inaction caused its employees to violate plaintiff's constitutional rights." *Boyd v. City of Buffalo*, No. 22-cv-00519, 2025 WL 262152, at *5 (W.D.N.Y. Jan. 22, 2025).

Plaintiff brings three due process claims pursuant to Section 1983. First, plaintiff alleges that defendant violated his procedural due process rights by failing to "provide any proper supervision, training, or efforts of any kind" to its JHOs to ensure compliance with the requirements of *Krimstock* and its progeny. Compl. ¶ 40. Specifically, plaintiff alleges that due to defendant's failure to train or supervise, JHOs no longer require County attorneys to prove that they meet the third prong of *Krimstock*, and that they "no longer require the County to produce any evidence at retention hearings, or to enter any evidence, whatsoever, into the record to establish that they meet any of the *Krimstock*

prongs." Compl. ¶ 16. Second, plaintiff brings another procedural due process claim on the basis that S.C. Code § 420 "affirmatively placed the plaintiff on notice that his vehicle could not be subject to forfeiture." Compl. ¶ 102. Thus, in plaintiff's view, defendant violated plaintiff's procedural due process rights by pursuing civil forfeiture of his vehicle when he was on "notice" that his vehicle could not be forfeited. Third, plaintiff brings a substantive due process claim on the basis that defendant has "appl[ied] [S.C. Code § 420] in a [manner] contrary to what was intended by the Suffolk County Legislature when it adopted it." Compl. ¶ 103.

### i. Procedural Due Process Claim: Retention Hearing

To comport with the requirements of due process, a neutral hearing officer's decision "must rest solely on the legal rules and evidence adduced at the hearing, and . . . the decision maker should state the reasons for his determination and indicate the evidence he relied on." *Shakhnes v. Berlin*, 689 F.3d 244, 256 (2d Cir. 2012) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 271 (1970)). Defendant's retention law requires just that: "When a hearing is held, the neutral magistrate *shall* review the documents supporting the arrest and any other relevant documents and take any testimony to determine whether the seizing agency has sustained its burden of proof as set forth in Subsection B(1) of this section." S.C. Code § 420-6(B)(2) (emphasis added).

Rather than attack defendant's formal policy, plaintiff instead alleges that defendant has an unwritten policy or custom of retaining seized vehicles "while failing to afford Due Process to the [vehicle] owners[.]" Compl. ¶ 74. Plaintiff alleges that this informal policy manifests in two ways.

First, plaintiff asserts that County attorneys at retention hearings engage in a widespread "practice of proffering zero evidence." Compl. ¶ 24. Plaintiff claims that

County attorneys "do[] nothing more than make a statement on the record" at the hearings, and that "[b]ased upon nothing more than the statement by the attorney," JHOs order that defendant retain seized vehicles. Compl. ¶¶ 48, 50. Plaintiff maintains that "it has been the policy, practice and procedure of the County JHOs to allow the County to retain seized vehicles without first establishing that it meets the requirements of *Krimstock*." Opp'n 25. That is, plaintiff argues that defendant's retention hearings violate *Krimstock* because JHOs allegedly conduct those hearings without requiring evidence, even though under *Krimstock* defendant must "establish that it [i]s necessary to retain [a] car by a preponderance of the evidence, not a preponderance of attorney argument." Compl. ¶ 18 (quoting *Boyle v. County of Suffolk*, No. 10-cv-03606, 2010 WL 4340627, at *4 (E.D.N.Y. Oct. 19, 2010)).

Second, plaintiff alleges a custom by way of defendant's "failure to train and/or supervise" its JHOs. Compl. ¶ 5. Plaintiff bases this assertion in part on the events during his retention hearing. Specifically, plaintiff alleges that JHO Filiberto—the presiding hearing officer—was "entirely unfamiliar with *Krimstock* and appeared to have never heard of the case." Compl. ¶ 6. Moreover, according to plaintiff, JHO Filiberto was unfamiliar with other seminal cases, such as *Boyle v. County of Suffolk*, in which district courts "have repeatedly ruled against the County, and repeatedly told the County what [it] is required to do[] to afford vehicle owners with Due Process." Compl. ¶ 7. In plaintiff's view, these facts support an inference that defendant "failed to train and supervise . . . its hearing officers . . . as to the requirements of *Krimstock*. . . in County retention hearings." Compl. ¶ 75.

Defendant responds that plaintiff's allegations fail to make out a Section 1983 claim. Defendant argues that plaintiff's threadbare assertion that JHOs accept attorney

argument alone is belied by the transcript of plaintiff's hearing and the transcripts of other County retention hearings plaintiff attaches to his Opposition. *See* Reply 7–9. Moreover, defendant contends that *Boyle* and the other cases which ruled against the County were decided before the Second Circuit clarified the constitutional requirements in *Krimstock* hearings in its *Ferrari* decision. Reply 6–8. Defendant adds that plaintiff waived any objection he had to JHO Filiberto's failure to formally admit documents into evidence by failing to raise that objection at the retention hearing. *See* Mot. 13. Finally, defendant posits that plaintiff's complaint alleges, at most, "random and unauthorized action in neglecting to formally enter documents into evidence" and "nothing showing a municipal policy or custom." Mot. 6.[6] The Court agrees that plaintiff's conclusory allegations are insufficient to support a Section 1983 claim premised on a widespread practice or failure to train or supervise municipal employees based on the events at plaintiff's retention hearing, and defendant's motion to dismiss this claim must be granted.

a.      Allegations of a Consistent and Widespread Practice

Even affording plaintiff every reasonable inference, his threadbare allegations are insufficient to plausibly allege the existence of a municipal policy or custom based on a consistent and widespread practice of which a supervising policy maker should have been aware. Plaintiff's allegations, mostly based on his own retention hearing, thus fail to state a *Monell* claim. While plaintiff need not conclusively prove the existence of a policy at this stage, he must "allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." *See Tieman v. City of Newburgh*, No. 13-cv-

---

[6]      Because plaintiff fails to plausibly allege a custom or policy for the reasons stated below, the Court does not address defendant's argument that plaintiff's constitutional claims premised on *Krimstock* fail in light of the Supreme Court's decision in *Culley*. *See* Mot. 12–13.

04178, 2015 WL 1379652, at *13 (S.D.N.Y. Mar. 26, 2015). "Put another way, mere allegations of a municipal custom, a practice of tolerating official misconduct, or inadequate training and/or supervision are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Id.*

Plaintiff fails to supply those factual details. For example, plaintiff's assertion that the alleged custom of JHOs failing to require evidence was so "widespread [and] uniform . . . the County's supervising policy-makers must have been aware," *see* Compl. ¶ 78,[7] is precisely the type of conclusory allegation courts have found insufficient to withstand a motion to dismiss. *See Cipollini v. City of New York*, 758 F. App'x 76, 79–80 (2d Cir. 2018) (summary order) (finding statement that the defendant's practice was "sufficiently large and widespread that the City must have been aware of it," too conclusory to withstand a motion to dismiss); *Duncan v. City of New York*, No. 11-cv-03826, 2012 WL 1672929, at *2–3 (E.D.N.Y. May 14, 2012) (concluding that "boilerplate statements" that the defendant had a "custom and policy of making illegal and false arrests" was "insufficient to state a claim of municipal liability under *Monell*"); *Triano v. Town of Harrison, NY*, 895 F. Supp. 2d 526, 535 (S.D.N.Y. 2012) ("[M]ere allegations of a

---

[7]    Plaintiff does not allege that JHOs themselves are policymakers for purposes of *Monell*. *See generally* Compl.; *see also Wheeler v. Wallkill*, No. 16-cv-07441, 2017 WL 2999503, at *7 (S.D.N.Y. July 13, 2017) ("[M]ultiple district courts have determined that under New York law, village and similar judges are not considered policymakers for the purposes of evaluating a *Monell* claim[.]") (collecting cases). Therefore, plaintiff cannot state a *Monell* claim based solely on the conduct of JHO Filiberto at his hearing because "*Monell* liability does not derive from individual incidents of wrongdoing by non-policymakers." *Treadwell v. County of Putnam*, No. 14-cv-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016) (collecting cases); *see also Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) ("[I]solated acts . . . by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability.").

municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details.").

Indeed, the complaint's only factual detail which would permit the Court to infer that a widespread practice of failing to require evidence at retention hearings existed are the events at plaintiff's own hearing. However, even if true, one incident is insufficient to plausibly plead the existence of a widespread practice amounting to a policy for purposes of *Monell. See Ferrari v. County of Suffolk*, No. 10-cv-04218, 2013 WL 4017022, at *10 (E.D.N.Y. Aug. 6, 2013), *rev'd on other grounds*, 845 F.3d 46 (2d Cir. 2016) ("[A] single incident involving an employee below the policymaking level is insufficient to support an inference of municipal policy or custom."); *see also Jones*, 691 F.3d at 85 (explaining that "two instances, or at the most three . . . fell far short of showing a policy, custom, or usage"); *Vasquez v. City of New York*, No. 20-cv-04641, 2023 WL 8551715, at *5 (S.D.N.Y. Dec. 11, 2023) ("[C]ourts dealing with *Monell* claims have disregarded the use of conclusory allegations that do not provide additional support that a plaintiff's experience is consistent with a larger pattern of similar conduct.").

To the extent that plaintiff attempts to remedy this deficiency by attaching transcripts of twenty-one other County retention hearings to his Opposition, *see generally* Opp'n, "the Court declines to consider them, as they were not referenced in the [c]omplaint." *Wos*, 2025 WL 1425725, at *16; *see also Munck v. Simons Found.*, No. 23-cv-09188, 2024 WL 4307776, at *5 (S.D.N.Y. Sept. 26, 2024). Plaintiff's assertion that he "relied on each of the exhibits attached" to the Opposition in drafting the complaint is unconvincing. Opp'n 8. Aside from general references to the County's retention hearing practices, plaintiff's complaint identifies only a single specific retention hearing other than his own. *See* Compl. ¶¶ 64–65. And plaintiff invokes this separate retention hearing

solely to allege that the JHO presiding over that hearing "apparently never heard of the *Boyle* decision." Compl. ¶ 65. Therefore, the complaint does not indicate that these other transcripts "were either necessary for [p]laintiff's statement of the claim or heavily relied upon by him when he drafted" the complaint, and the Court will not consider them. *Vasquez v. Yadali*, No. 16-cv-00895, 2020 WL 1082786, at *5 (S.D.N.Y. Mar. 5, 2020).[8]

In sum, plaintiff fails to plausibly allege that defendant has a consistent and widespread policy or custom of accepting "nothing more than attorney argument" in its retention hearings, and thus fails to plead a policy for purposes of *Monell* on this ground. *See* Compl. ¶ 17; *see also Wos*, 2025 WL 1425725, at *16 (opining that "isolated instances" of "purported failure" to follow *Krimstock* "where documentary evidence was discussed on the record by both counsel for the County and for the defendant at the hearing, but not entered into evidence . . . d[id] not suffice to establish *Monell* liability").

> b.   Allegations of a Failure to Train or Supervise

Plaintiff's allegation of a policy or custom premised on defendant's alleged failure to train or supervise fares no better. "The failure to train or supervise city employees may constitute an official policy or custom if the failure amounts to deliberate indifference to the rights of those with whom the city employees interact." *Manigault v. City of New York*, No. 11-cv-04307, 2012 WL 13049173, at *7 (S.D.N.Y. Apr. 19, 2012) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). To establish "deliberate indifference," there

---

[8]     Even were the Court to consider these transcripts, contrary to plaintiff's allegations, the transcripts clearly reflect that JHOs have in fact considered evidence before ordering retention of vehicles, including both documents and testimony. *See, e.g.*, ECF Nos. 25-5, 25-6, 25-7, 25-8, 25-9, 25-10, 25-12, 25-13, 25-16, 25-17, 25-19, 25-21, 25-22, 25-23, (entering into evidence documents such as drivers' conviction information and arrest reports); ECF Nos. 25-11, 25-14, 25-15, 25-20, 25-24, 25-25 (considering witness testimony).

must be a showing that: "(1) a policymaker knows to a moral certainty that city employees will confront a particular situation; (2) the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or there is a history of employees mishandling the situation; and (3) the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* Deliberate indifference is a "stringent standard of fault." *Hernandez v. United States*, 939 F.3d 191, 207 (2d Cir. 2019).

"[A] [Section] 1983 claim against a municipality is at its weakest where it turns on an alleged failure to train or supervise." *Greene v. City of New York*, 742 F. App'x 532, 536 (2d Cir. 2018) (summary order) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)). Accordingly, "courts have been skeptical of municipal liability claims predicated on an alleged failure to train." *Davis v. City of New York*, No. 12-cv-03297, 2018 WL 10070540, at *4 (S.D.N.Y. Mar. 30, 2018).

Plaintiff asserts that defendant failed to train and supervise its JHOs to comply with the requirements of due process as set forth in *Krimstock* and its progeny. Compl. ¶ 40. Plaintiff advances this assertion based on the events at his own hearing, where JHO Filiberto "was entirely unfamilar" with *Krimstock* as well as the "myriad of additional cases" in this district which "ruled against the County, and repeatedly told the County what [it] is required to do, to afford vehicle owners with Due Process." Compl. ¶¶ 6–7. In addition to JHO Filiberto, plaintiff asserts a different JHO—JHO Barton—also held a retention hearing and "apparently never heard" of *Boyle*, one of the "myriad" cases implicating the process afforded vehicle owners at the County's retention hearings. Compl. ¶ 65. Plaintiff alleges that these two JHOs have collectively presided over hundreds of the County's *Krimstock* hearings. Compl. ¶ 66. Thus, the JHOs' "failure to

comply with *Krimstock* is anything but a random or isolated event." Opp'n 12. Again citing to the twenty-one transcripts he attaches to his Opposition, plaintiff asserts that "all of the County-appointed JHOs have either refused or failed to apply the requirements of *Krimstock* at their hearings, for decades." Opp'n 12. According to plaintiff, these transcripts reflect defendant's "decades long failure to properly train and supervise its hearing officers[.]" Opp'n 24.

In response, defendant argues that plaintiff's allegations again fail to make out a policy or custom, as well as a causal link between the alleged policy and constitutional deprivation. *See* Mot. 28–29. At the outset, defendant disputes plaintiff's characterization of JHO Filiberto's remarks at plaintiff's retention hearing. Defendant argues that the presiding JHO "was obviously familiar" with *Krimstock* given that her factual findings on the record tracked the requirements set forth in *Krimstock II*. *See* Mot. 23. Defendant also contends plaintiff's position that *Boyle* and "myriad . . . additional cases" established "constitutional precedent" is based on a misunderstanding of those cases. *See* Mot. 23. Defendant also points out that the transcripts referenced by plaintiff in his Opposition "all stemmed from hearings occurring in 2010, 2011, 2012, and 2013, all at least 10 years prior to plaintiff's hearing, and based on a premise that was overruled by *Ferrari*." Mot. 24. Finally, defendant asserts that—to the extent plaintiff's failure to train claim is predicated on the events at his hearing—one such "aberration" is insufficient to impose municipal liability. Mot. 23.

Even assuming plaintiff's factual allegations to be true, he fails to plausibly allege deliberate indifference, and thus fails to establish a policy arising from a purported failure to train or supervise.

18

### 1. *Failure to Train*

To state a *Monell* claim on a failure to train theory, plaintiff must allege sufficient facts to support a reasonable inference that defendant failed to train the JHOs, that it did so with "deliberate indifference," and that such failure caused plaintiff's constitutional injuries. *See Jackson v. Nassau County*, 552 F. Supp. 3d 350, 378 (E.D.N.Y. 2021). In failure to train cases, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 129 (2d Cir. 2004). "While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery," they must still allege facts indicating, for example, "a pattern of similar constitutional violations by untrained municipal employees[.]" *Simms v. City of New York*, 480 F. App'x 627, 631 n.4 (2d Cir. 2012) (summary order).

To begin, although plaintiff insists that defendant failed to train the JHOs, he "does not allege that Suffolk County *bears responsibility* for training hearing officers at all." *Wos*, 2025 WL 1425725, at *16 (emphasis added). As recently explained by another court rejecting this exact theory: "[I]t seems obvious to the Court that training a hearing officer on the law seems counterintuitive, since those officials are, by their nature as at least quasi-judicial officers, required to be neutral and follow the law." *Id.* This Court too is skeptical that the County has a duty to train neutral quasi-judicial officers on the law, and that the County could be held liable if those officers interpreted or applied the law

differently than how they were supposedly trained.[9] *See, e.g., Brown v. Paterson*, No. 10-cv-05833, 2011 WL 7429454, at *10 (S.D.N.Y. Dec. 27, 2011), *report and recommendation adopted*, 2012 WL 639151 (Feb. 28, 2012) (concluding that municipality "cannot be held liable for a failure to train" municipal judges because the county "[was] not responsible for, and [took] no part in, the training and supervision of municipal and city judges which sit within its boundaries"); *accord Wiltz v. N.Y. Univ.*, No. 18-cv-00123, 2019 WL 721658, at *13 (S.D.N.Y. Feb. 1, 2019) ("[C]ourts in this Circuit have routinely held that under New York law judges are not considered policymakers for the purposes of evaluating a *Monell* claim and, as a result, a municipality cannot be liable for a § 1983 claim based solely on the actions of its judges.").

In any event, plaintiff's allegations concerning defendant's failure to train are too conclusory to withstand a motion to dismiss. Specifically, plaintiff "fail[s] to plead any specific deficiency" with defendant's training programs or policies "that could have led to the alleged constitutional violations." *Vasquez*, 2023 WL 8551715, at *7. While plaintiff asserts in conclusory fashion that defendant "has wholly failed to train and supervise . . .

---

[9]    Although the complaint makes cursory reference to the County's purported failure to "train and supervise . . . its attorneys within the Office of the County Attorney," Compl. ¶ 75, it is otherwise bereft of any allegations with respect to how the County's purported failure to train or supervise its attorneys caused plaintiff's alleged constitutional injuries. *See generally* Compl. Moreover, the Opposition focuses exclusively on the County's "failure to train and supervise its hearing officers." Opp'n 24. In fact, plaintiff does not mention the County's alleged failure to train its attorneys in his Opposition at all. *See generally* Opp'n. Therefore, the court declines to address this theory. And in any event, this theory would fail for the same reasons plaintiff's failure to train or supervise JHOs theory fails, namely, because plaintiff fails to allege sufficient non-conclusory facts to support an inference that his purported constitutional injury was caused by a deficiency in the County's training program. *See Covington v. City of New York*, 916 F. Supp. 282, 289 (S.D.N.Y. 1996) (dismissing *Monell* claim based on failure to train assistant district attorneys because "conclusory allegations of misconduct are not sufficient evidence of a municipal policy or custom").

its hearing officers who preside over *Krimstock* hearings[,]" Compl. ¶ 75, he fails to "clearly point out the deficiencies in defendant['s] training programs" which caused his alleged constitutional violation. *Vasquez*, 2023 WL 8551715, at *6; *see also Marte v. N.Y.C. Police Dep't*, No. 10-cv-03706, 2010 WL 4176696, at *3 (S.D.N.Y. Oct. 12, 2010) (dismissing *Monell* claims where the plaintiffs did "not identify procedural manuals or training guides, nor [did] they highlight relevant particular aspects of police training or supervision").

Nor does plaintiff explain how the purported deficiency in the County's training program caused his alleged procedural due process deprivation: JHO Filiberto's order to retain plaintiff's vehicle despite "no evidence in[] the record." Compl. ¶ 23. Put differently, plaintiff's allegations "regarding a supposed lack of training are too general and speculative to support a *Monell* claim, and their causal relationship to [his] specific alleged injury is tenuous at best." *Lehal v. Cent. Falls Det. Facility Corp.*, No. 13-cv-03923, 2016 WL 7377238, at *11 (S.D.N.Y. Nov. 21, 2016).

Plaintiff's allegation that JHO Filiberto "was entirely unfamiliar with *Krimstock*, and appeared to have never heard of the case," does not compel a different conclusion. Compl. ¶ 6. As the Second Circuit clarified in *Ferrari*, it has "never held that th[e] [*Krimstock II*] process is indeed the only one due process permits" at a retention hearing. *Ferrari*, 845 F.3d at 59. Indeed, the court rejected the plaintiff's assumption "that the procedural requirements articulated in *Krimstock II* necessarily constitute the minimum constitutional requirements at any retention hearing in any municipality pursuant to any forfeiture law." *Id.* n.18. Instead, the Second Circuit explained that the minimum requirements of a retention hearing include an opportunity for claimants to "test the probable validity of continued deprivation of their vehicles" as well as an opportunity for

the "neutral magistrate to consider whether less drastic measures than continued impoundment" can protect the County's interests. *Id.* at 58. Plaintiff alleges no facts indicating that the JHOs were unaware of those requirements or that they were not satisfied here. *See* Hr'g Tr. 10:23–11:10 (concluding that probable cause existed for plaintiff's arrest and that retaining the vehicle was necessary "in order to ensure it's [sic] availability in the civil forfeiture action").[10] And given the Second Circuit's guidance in *Ferrari* that there is "no reason to suppose . . . that every procedural requirement articulated in [*Krimstock II*] must be followed by other municipalities," 845 F.3d at 59 n.18, it does not follow that a JHO's alleged unfamiliarity with *Krimstock* amounts to a due process violation. Therefore, JHO Filiberto's purported unfamiliarity with *Krimstock* does not support a reasonable inference that defendant's failure to train caused plaintiff's alleged constitutional violation.[11]

---

[10]     Relatedly, plaintiff's insistence that defendant fails to train JHOs to make the requisite findings with respect to *Krimstock*'s third prong—that defendant "must establish . . . it is necessary that the vehicle remain impounded to ensure its availability for a judgment of forfeiture"—is misplaced. Opp'n 10–11. "As *Ferrari* makes clear . . . evidence that a driver has a history of DWI or reckless driving serves to make out a prima facie case that retention pendents lite is necessary to protect the County's financial interest and its interest in protecting the public." *Mateo v. County of Suffolk*, No. 12-cv-06160, 2018 WL 2943568, at *6 (E.D.N.Y. June 12, 2018). And a prior DWI conviction exposes a vehicle owner to the risk of retention pending a forfeiture action pursuant to S.C. § 420. *See* S.C. Code § 420. Thus, to the extent plaintiff claims that defendant failed to train or supervise its JHOs because "the County's hearing officers [do] not require the County to prove that they meet the third prong of the *Krimstock* requirements," *see* Compl. ¶ 16, this claim fails given JHO Filiberto's finding that there was probable cause for plaintiff's arrest and that plaintiff has a prior DWI conviction. *See* Hr'g Tr. 11:23–12:8. Accordingly, plaintiff fails to plausibly allege that JHOs do not require the County to satisfy the third prong of the *Krimstock* test. *See Mateo*, 2018 WL 2943568, at *6 (vacating summary judgment in favor of the plaintiff and dismissing "due process claim . . . premised on the County's failure to meet the third prong of *Krimstock*").

[11]     For these same reasons, plaintiff's allegation as to JHO Barton's unfamiliarity with *Boyle* similarly fails to support a *Monell* claim. Moreover, as explained above, these two

In sum, plaintiff fails to plausibly allege that defendant's purported failure to train "amounted to a decision by the city itself to violate the Constitution." *Lawrence v. City of Rochester*, No. 09-cv-06078, 2015 WL 510048, at *9 (W.D.N.Y. Feb. 6, 2015) (quoting *Connick*, 563 U.S. at 61–62). Accordingly, plaintiff's *Monell* claim premised on a failure to train theory must be dismissed.

### 2. *Failure to Supervise*

Plaintiff's claim premised on a failure to supervise theory fails largely for the same reasons. To show that defendant "exhibited deliberate indifference to a failure to supervise," plaintiff must "show that the need for more or better supervision to protect against constitutional violations was obvious." *Vasquez*, 2023 WL 8551715, at *6 (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). To do so, plaintiff must allege "a pattern of allegations of or complaints about similar unconstitutional activity" and that the "municipality consistently failed to investigate those allegations." *Id.* Put differently, "plaintiff must not only establish an obvious need but also the municipality's deliberate indifference thereto." *Id.*; *see also Vann*, 72 F.3d at 1049 ("[D]eliberate indifference may be inferred if the complaints are followed by no meaningful attempt on the part of the municipality to investigate or to forestall further incidents.").

Plaintiff's complaint cites to a series of decisions in this district rendered against defendant which, in his view, support an inference that defendant was aware the JHOs were "failing to comply with . . . Due Process." Compl. ¶ 46. Notably, nearly every decision

---

incidents alone by non-policymaking officials are insufficient to raise an inference of a policy or custom arising from a failure to train. *See Jones*, 691 F.3d at 85.

cited by plaintiff predates the Second Circuit's decision in *Ferrari*.[12] This appears to be no accident, as the *Ferrari* Court concluded that the County defendant "likely in response to [*Krimstock*], indisputably provides" prompt pre-forfeiture retention hearings in compliance with due process. *Ferrari*, 845 F.3d at 66. Far from "deliberate indifference," the Second Circuit concluded that defendant affords "extensive process" to protect title owner's interests in its retention hearings. *Id.*; *see also id.* at 63 (reviewing retention hearing transcripts in the record and observing that the County's forfeiture law requires that "the County, in order to meet its burden of showing likelihood of success in the forfeiture proceeding, must provide . . . *evidence*" of a driver's history of driving offenses) (emphasis added).

Plaintiff's suggestion that defendant did not "attempt to supervise" JHOs to "ensure that they conduct[ed] such hearings in a manner which comported with *Krimstock*," Compl. ¶ 14, similarly does not move the Court. For one, "it is not obvious that a county would be responsible for . . . supervising" a judicial officer "on the proper way to do their job." *Wos*, 2025 WL 1425725, at *16. Moreover, as explained supra, the

---

[12]     Plaintiff's sole cited case which postdates *Ferrari*—*Santander Consumer USA Inc. v. County of Suffolk*, No. 20-cv-02656, 2021 WL 4480574 (E.D.N.Y. Sept. 30, 2021)—is inapposite. *Santander* concerned the constitutionally required notice and process due to "properly recorded lienholders" in Suffolk County's retention hearings. *See id.* at *1. The court concluded that sufficient due process as articulated in *Ford Motor Credit Co. v. New York City Police*, 503 F.3d 186 (2d Cir. 2007), "require[d] only that the County abide by its constitutional obligation to institute forfeiture proceedings within a reasonable time when an interested party, such as [the lienholder] seeks a disposition with respect to a vehicle in which it holds a cognizable property interest." *Santander*, 2021 WL 4480574, at *5. Thus, the court sustained a *Monell* claim based on the County's "standard procedure and policy" of "retaining the . . . [v]ehicles without providing . . . lienholder[s], with notice and opportunity to be heard at a forfeiture proceeding[.]" *Id.* at *13. That case did not bear on the issue plaintiff alleges, "the burdens which the County was required to meet to be able to retain continuing possession of seized motor vehicles, while affording [vehicle] *owners* Due Process[.]" Compl. ¶ 12 (emphasis added).

facts alleged do not support an inference that the constitutional minimum requirements were not satisfied at plaintiff's retention hearing, let alone that defendant's alleged "deliberate indifference" to supervising JHOs caused any deficiencies at the hearing. And again, the two instances of JHOs Filiberto and Barton's alleged unawareness of *Krimstock* and its progeny fails, on its own, to establish a policy for purposes of *Monell*. *See Brown v. Fire Dep't of City of N.Y.*, No. 19-cv-02400, 2020 WL 6940992, at *9 (E.D.N.Y. Nov. 25, 2020) ("[W]hile there is no magic number of instances of unconstitutional conduct that will suffice to permit the inference of a pattern, courts in the Second Circuit have found that two incidents did not support an inference of a policy or custom under *Monell*."). Thus, plaintiff's *Monell* claim predicated on defendants' failure to supervise fails.

Accordingly, plaintiff's procedural due process claim related to his retention hearing must be dismissed.[13]

### ii. Due Process Claims: Suffolk County Code, Chapter 420

Plaintiff brings additional claims pursuant to Section 1983 based on the text of S.C. Code § 420. It states in relevant part:

> No property shall be forfeited under this article unless the claiming authority produces clear and convincing evidence that the noncriminal defendant engaged in affirmative acts which aided, abetted or facilitated the conduct of the criminal defendant. The noncriminal defendant must take all prudent steps to prevent the illegal use of his or her property, and willful disregard by the owner or lienholder of the acts giving

---

[13]    In light of the Court's conclusion that plaintiff does not plausibly allege a policy or custom for purposes of *Monell*, it need not determine whether plaintiff has plausibly alleged a constitutional violation. *See Cipolloni v. City of New York*, No. 17-cv-03437, 2018 WL 11462821, at *3 n.3 (E.D.N.Y. May 21, 2018) ("Because I find that the plaintiff cannot allege an official custom or practice, I do not address whether the plaintiff's constitutional rights were violated.").

rise to forfeiture shall not constitute a defense to such forfeiture.

S.C. Code § 420-7(G).

Plaintiff asserts that his right to procedural due process was violated because this provision put him on notice that his vehicle was not subject to forfeiture under the statute. Compl. ¶ 99. Specifically, plaintiff contends that because a bank held a lien on his car, S.C. Code § 420 "affirmatively placed . . . plaintiff on notice" that his car "could not be subjected to any civil forfeiture proceeding under Chapter 420, unless the County of Suffolk could plead and prove that the bank which financed . . . [his] vehicle engaged in affirmative acts which aided, abetted or facilitated an alleged underlying criminal offense for which the vehicle was used as an instrumentality." Compl. ¶ 96. At the same time, plaintiff argues that his right to substantive due process was violated because County attorneys "attempt[] to apply Chapter 420 in a [manner] contrary to what was intended by the Suffolk County Legislature," by seeking forfeiture of vehicles without requiring proof that the bank aided and abetted the underlying crime. Compl. ¶ 103. Neither claim has merit.

A.  Procedural Due Process

To state a procedural due process violation, plaintiff must plausibly allege that he "possessed a protected liberty or property interest and that he was deprived of that interest without constitutionally sufficient process." *Broecker v. N.Y.C. Dep't of Educ.*, No. 23-655, 2023 WL 8888588, at *2 (2d Cir. Dec. 26, 2023) (summary order); *see also Tooly v. Schwaller*, 919 F.3d 165, 172 (2d Cir. 2019) ("The Due Process Clause is violated when a claimant is deprived of a protected liberty or property interest without adequate process."). Generally, procedural due process requires reasonable notice and an opportunity to be heard. *See Strong v. Bd. of Educ. of Uniondale Union Free Sch. Dist.*,

902 F.2d 208, 212 (2d Cir. 1990). Moreover, just like all of plaintiff's constitutional claims against the County, plaintiff must meet the requirements of *Monell*, i.e., that the infringement of his right to procedural due process was caused by a municipal policy or custom. *See Dunaway v. Mamaroneck*, No. 22-cv-08823, 2024 WL 3252935, at *2 (S.D.N.Y. July 1, 2024).

Plaintiff does not, and indeed cannot, plead that he did not have an opportunity to be heard. *See generally* Hr'g Tr. Nor does plaintiff allege that he lacked reasonable notice—at least of the retention hearing. Instead, plaintiff alleges that he did have notice, specifically, "notice that his vehicle *was not* subject to forfeiture under Chapter 420." Compl. ¶ 99 (emphasis in original). Plaintiff points to the protections set forth in S.C. Code § 420 which require the County to meet a burden of production against "noncriminal defendant" vehicle owners before their property is subject to forfeiture. *See* Compl. ¶¶ 96–98. Plaintiff's seized vehicle was financed by Bank of America. Compl. ¶ 96; *see also* Hr'g Tr. 4:5–11. Thus, in plaintiff's view, he was on notice that his car could not be seized without the County proving that Bank of America affirmatively "aided, abetted, or facilitated" the underlying criminal offense. *See* Compl. ¶ 96. Plaintiff further alleges that, by failing to do so, the County violated his procedural due process rights.

Defendant argues that plaintiff's interpretation of the code is "frivolous." Mot. 26. Defendant contends that the S.C. Code affords protections "to potentially innocent *owners* who did not commit the crime in question," not to persons situated like plaintiff, i.e., criminal defendants in the underlying seizure. Mot. 23 (emphasis in original). Defendant further contends that even if the S.C. Code put plaintiff on notice that his vehicle would not be subject to forfeiture, plaintiff's car was not in fact subject to forfeiture at his retention hearing; in fact, the County was not awarded forfeiture at the hearing at

all. Mot. 27. Thus, any defense that plaintiff wishes to raise about whether defendant "will ultimately succeed in a civil forfeiture action can be raised in the civil forfeiture action," and does not make out a constitutional injury at this juncture. Mot. 27. Finally, defendant points out that plaintiff fails to address any of defendant's arguments as to this claim in his opposition, and "[i]n fact, no attempt is made at defending" this claim whatsoever. Reply 11.

As a threshold matter, the Court notes that plaintiff's failure to address any of defendant's arguments about this claim in his Opposition provides an independent basis for dismissal. *See Malik v. City of New York*, 841 F. App'x 281, 284 (2d Cir. 2021) (summary order) ("[W]hen a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned, especially in the case of a counseled party where a court may infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *see also N.Y.S. Ct. Clerk's Ass'n v. Unified Ct. Sys. of the State of N.Y.*, 25 F. Supp. 3d 459, 469 (S.D.N.Y. 2014) ("It is well settled in the Second Circuit that a plaintiff's failure to respond to contentions raised in a motion to dismiss claims constitutes an abandonment of those claims.") (collecting cases).

This claim also fails because plaintiff does not plausibly allege a procedural due process violation. Plaintiff alleges that defendant pursued forfeiture of his vehicle pursuant to S.C. Code § 420 "despite the fact that the very Code upon which the County seeks to base its authority to seek forfeiture affirmatively prohibits the County from seeking such forfeiture[.]" Compl. ¶ 100. The essence of plaintiff's claim is that S.C. Code § 420 created a protected liberty interest in the right to his vehicle free from forfeiture

after it was seized unless the County could prove certain elements as to a third-party at the retention hearing. *See* Compl. ¶¶ 96–98.

But plaintiff has not alleged facts to support that he has a protected liberty interest. The "fact that a state has established procedures to be followed does not mean that it has created a protectable liberty interest." *Rodriguez v. McLoughlin*, 214 F.3d 328, 339 (2d Cir. 2000). That is, the "expectation of receiving process is not, without more, a liberty interest protected by the Due Process Clause." *BAM Historic Dist. Ass'n v. Koch*, 723 F.2d 233, 237 (2d Cir. 1983) (quoting *Olim v. Wakinekona*, 461 U.S. 238, 250 n.12 (1983)); *see also Kearney v. N.Y.S. D.O.C.S.*, No. 11-cv-01281, 2013 WL 5437372, at *14 (N.D.N.Y. Sept. 27, 2013) (quoting *Cofone v. Manson*, 594 F.2d 934, 938 (2d Cir. 1979)) ("[A]lthough a Due Process Clause liberty interest may be grounded in state law that places substantive limits on the authority of state officials, no comparable entitlement can derive from a statute that merely establishes procedural requirements."). Contrary to plaintiff's allegation that defendant violated his procedural due process rights by failing to comply with S.C. Code § 420, "the failure to follow state law procedures is not equivalent to a federal constitutional injury." *Morton v. County of Erie*, 335 F. Supp. 3d 449, 460 (W.D.N.Y. 2018); *see also Tallman v. County of Chautauqua*, 335 F. App'x 92, 94 (2d Cir. 2009) (summary order) ("[A] public official's failure to follow state law procedures . . . is not equivalent to a federal constitutional injury. Any such claim is properly pursued in state court.").

Moreover, the plain text of S.C. Code § 420 applies to "noncriminal defendants." S.C. Code § 420-7(G). In this case, any protections and process conferred under the statute extend to Bank of America—not to the criminal defendant . Thus, any insufficiency of notice or opportunity to be heard about the forfeiture of the vehicle would violate Bank

of America's rights, if any, and plaintiff lacks standing to pursue those claims.[14] *See In re: Soundview Elite, Ltd.*, No. 15-cv-05666, 2016 WL 1178778, at *10 n.8 (S.D.N.Y. Mar. 23, 2016); *see also BMG Monroe I, LLC v. Village of Monroe*, No. 20-cv-01357, 2022 WL 1094538, at *8 (S.D.N.Y. Apr. 12, 2022) ("Generally, a plaintiff may not rest his claims to vindicate the constitutional or statutory rights of third parties.") (collecting cases); *accord Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 809 (D.C. Cir. 1987) ("A litigant therefore could never have standing to challenge a statute solely on the ground that it failed to provide due process to third parties not before the court.").

What's more, although plaintiff asserts that S.C. Code § 420 gave him "notice" that his car would not be subject to forfeiture under the statute, he does not allege that his car was in fact at risk of forfeiture at the retention hearing. Indeed, plaintiff concedes that defendant "[n]ever commenc[ed] a forfeiture action" at all. Opp'n 8. Thus, any constitutional challenge predicated on defendant "subjecting . . . plaintiff's vehicle to civil forfeiture," necessarily fails and must be dismissed. Compl. ¶ 110. And again, the events at plaintiff's hearing alone are insufficient to establish a policy or custom as required by *Monell* to state a constitutional claim against a municipality. *See Jones*, 691 F.3d at 85. Accordingly, plaintiff's procedural due process claim based on the County's application of S.C. Code § 420 must be dismissed.

---

[14] Plaintiff does not and cannot plead that Bank of America did not have notice or opportunity to be heard at the retention hearing. *See* Hr'g Tr. 7:24–8:2 (representing to JHO Filiberto that "Bank of America has been noticed and has not appeared at this hearing"). And in any event, "due process does not entitle lienholders to notice and an opportunity to be heard at a *Krimstock* retention hearing to challenge the County's likelihood of success at a forfeiture proceeding." *Santander*, 2021 WL 4480574, at *9.

B.  Substantive Due Process

Plaintiff's substantive due process claim premised on defendant's application of S.C. Code § 420 fails largely for the same reasons. Plaintiff alleges that "by attempting to apply Chapter 420 in a [manner] contrary to what was intended by the Suffolk County Legislature when it adopted it," defendant has violated plaintiff's right to substantive due process. Compl. ¶ 103. Defendant responds that this claim is not cognizable because it is duplicative of plaintiff's procedural due process claim. Mot. 28. Defendant argues that plaintiff's claim is also based on a misreading of S.C. Code § 420. Mot. 28. Defendant further argues that plaintiff fails to allege a policy or custom pertaining to "supposedly unconstitutionally seeking forfeiture of vehicles operated by owners of vehicles with liens." Mot. 28–29. Finally, defendant points out that plaintiff again failed to address its arguments in his opposition, and, in doing so, concedes this claim. Reply 11.

Plaintiff's substantive due process claim fails for several reasons. First, "[c]ourts in the Second Circuit have held that [the] scope of the substantive due process clause does not extend to a property interest in a vehicle." *Wos*, 2025 WL 1425725, at *13. Thus, any deprivation in plaintiff's property interest in his vehicle is insufficient to support a substantive due process claim. Next, this claim must be dismissed as duplicative of plaintiff's procedural due process claim because it "seeks to remedy the same harm and challenge the same conduct[.]" *Cianfano v. Village of Tuckahoe*, No. 18-cv-07882, 2019 WL 3456887, at *5 (S.D.N.Y. July 31, 2019).

Moreover, "[i]n order for a plaintiff to maintain a substantive due process claim against a municipality, the plaintiff must demonstrate that the municipality's actions were willful, arbitrary, conscience-shocking or oppressive in a constitutional sense." *McCormack Sand Co. v. Town of N. Hempstead Solid Waste Mgmt. Auth.*, 960 F. Supp.

589, 595 (E.D.N.Y. 1997). Even if plaintiff's substantive due process claim was not duplicative of his procedural due process claim, he fails to plead any non-conclusory facts permitting the Court to reasonably infer that defendant engaged in "willful, arbitrary, conscience-shocking or oppressive" conduct. *See id.* Plaintiff's claim also fails because, as explained above, he fails "to make sufficient allegations of a municipal policy" to impose Section 1983 liability on defendant. *Brennan v. County of Broome*, No. 09-cv-00677, 2011 WL 2174503, at *7 (N.D.N.Y. June 2, 2011). Finally, this claim fails for the independent reason that plaintiff again failed to respond to defendant's arguments in his Opposition, and therefore is deemed to have abandoned this claim. *See Malik,* 841 F. App'x at 284.

Accordingly, plaintiff's substantive due process claim must be dismissed.

### iii. As-Applied Constitutional Challenge

Plaintiff brings an "as-applied constitutional challenge" to S.C. Code § 420 on the grounds that, by seeking retention of plaintiff's vehicle for purposes of eventually initiating a civil forfeiture action, the County is attempting "to apply Chapter 420 in . . . a manner [which] is unconstitutional and would violate . . . plaintiff's rights" under the federal and New York State constitutions. Compl. ¶ 109. Plaintiff fails to explain how, if at all, this claim diverges from his other constitutional claims. *Compare* Compl. ¶ 100 (alleging in support of Section 1983 claims that "[b]y attempting to invoke Chapter 420 to pursue civil forfeiture of the plaintiff's vehicle . . . the defendant is seeking to deprive the plaintiff of his personal property in violation of his right to due process . . . .), *with* Compl. ¶ 109 (alleging in support of as-applied challenge that "the County's effort to apply Chapter 420" for purposes of commencing a civil forfeiture action "violate[s] the plaintiff's rights under [t]he United States Constitution"). Aside from being duplicative,

this claim must also be dismissed because, as explained above, plaintiff's complaint does not allege that defendant in fact has instituted civil forfeiture proceedings. *See* Opp'n 8; *see also Wos*, 2025 WL 1425725, at *17 (dismissing as-applied challenge to S.C. Code § 420 "because the County has not instituted a civil forfeiture action pursuant to that chapter against [the plaintiff] or his vehicle").

### III.    Declaratory Judgment and Injunctive Relief

Plaintiff also "seeks a declaratory judgment, adjudging that such practices on the part of the County are unconstitutional, and that Suffolk County Code chapter §270 et seq and/or its amended or replacement provisions are unconstitutional as they are being applied by the County." Compl. ¶ 93. Plaintiff also seeks injunctive relief. Compl. ¶ 93.

This cause of action must be dismissed for lack of standing. Instructive is the court's decision in *Reyes v. County of Suffolk*, wherein the plaintiff "s[ought] a declaratory judgment and permanent injunctive relief enjoining the [d]efendant[s] from committing future procedural due process violations like the ones he allegedly experienced at his own post-seizure retention hearing." 995 F. Supp. 2d 215, 231–32 (E.D.N.Y. 2014). The court dismissed the claim for lack of standing "because there [was] no allegation by the [p]laintiff that he will personally suffer future injury and because a plaintiff with no claim of his own lacks standing to assert the rights of others." *Id.* at 232. So too here: Plaintiff fails to allege that he will suffer future injury based on defendant's allegedly unconstitutional practices. As such, plaintiff's claim for declaratory and injunctive relief must be dismissed.

## CONCLUSION

Accordingly, for the reasons stated above, defendant's motion to dismiss is **GRANTED.** Plaintiff's complaint is hereby dismissed. The Clerk of Court is respectfully directed to enter judgment and to close the case.

**SO ORDERED.**

   /s/ Natasha C. Merle
NATASHA C. MERLE
United States District Judge

Dated:       September 9, 2025
             Brooklyn, New York